UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X     **Docket#**
LEIER,                        :     14-cv-03121-PKC-PK
            Plaintiff,        :
                              :
     - versus -               :     U.S. Courthouse
                              :     Brooklyn, New York
                              :
LINCOLN LIMOUSINE LUXURY INC. :
            et al.,           :     December 1, 2015
            Defendants        :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
BEFORE THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff:**          **Louis Moshe Leon, Esq.**
                                Borrelli & Associates, PLLC
                                1010 Northern Blvd
                                Suite 328
                                Great Neck, NY 11021


**For the Defendant:**          **Arthur H. Forman, Esq.**
                                Attorney at Law
                                98-20 Metropolitan Avenue
                                Forest Hills, NY 11375


**Transcription Service:**      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Civil Cause for Status Conference,

2  docket number 14-cv-3121, Leier v. Lincoln Limousine

3  Luxury Inc, et al.

4          Counsel, please state your name for the record,

5  starting with the plaintiff.

6          MR. LEON:  Louis Leon from Borrelli &

7  Associates on behalf of the plaintiff.

8          Good morning, your Honor.

9          MR. FORMAN:  Good morning, your Honor.

10          Arthur H. Forman for all the defendants.

11          THE COURT:  So we're here for a status

12  conference and also there's a pending motion for

13  conditional certification.  Let's start with the update

14  on where everybody is, as far as the status of the case.

15  The notes I have from the last conference dated September

16  25th indicated that that there was an issue at the

17  deposition of the plaintiff.  So I wanted to see where

18  that is.

19          MR. LEON:  Your Honor, my understanding from my

20  office, since I was recently put on this case is that my

21  office has made repeated attempts to reach out to Ms.

22  Leier, the plaintiff.  I actually spoke with her about a

23  week and a half or two weeks ago and I asked her in

24  preparation for this conference, what her condition was

25  like, if she was ready to be deposed and she adamantly

3

Proceedings

1  told me that she still was not fit to be deposed or to

2  basically sit around for many hours because she wasn't

3  sure about her physical condition.

4          And that according to her, her doctor did

5  substantiate that I asked her if we could speak again and

6  if she can get something in writing from her doctor.  I

7  have not heard from her since.  I was trying to do this

8  with enough time before the conference, so that we could

9  sort of have an answer for opposing counsel and for your

10 Honor.

11         THE COURT:  Uh-huh.

12         MR. LEON:  I was just speaking with opposing

13 counsel prior to the start of the conference and I

14 advised them that I am going to once again try again

15 today to speak with my client and tell her how important

16 it is for us to understand definitively what day she can

17 be deposed and explain to her that unless she is

18 bedridden and cannot get up that she has to be deposed in

19 this case.

20         THE COURT:  Uh-huh.

21         MR. LEON:  And if any accommodations are

22 necessary, that we should also do that.

23         THE COURT:  What is her condition?  Is she able

24 to move around?

25         MR. LEON:  Right now, honestly, your Honor, I

4

Proceedings

1  don't know currently what her condition is after the

2  surgery that she had.  All I know is that she explained

3  to me that she was having -- it was a very quick phone

4  call.  She told me she couldn't speak for very long but

5  that she just wasn't physically able to get up and go and

6  be deposed.  That was my understanding from the

7  conversation.  I would like a chance to clarify with her

8  and get an accurate update, so that I am not

9  misrepresenting her condition to the Court.

10            THE COURT:  Yes.  Okay.  Well, that would be

11  useful because obviously if there are accommodations that

12  can be made to depose her in a timely manner, I'm sure

13  opposing counsel would be able to -- will be amenable to

14  that, as long as we know specifically what the problems

15  are.

16            MR. LEON:  Correct.

17            THE COURT:  Right.  Okay.

18            MR. LEON:  And I may be mistaken, but I believe

19  there was an individual that I didn't depose, but someone

20  from my office deposed, a Mr. Korban.

21            MR. FORMAN:  Yes, he was deposed.

22            MR. LEON:  I don't know previous conversations

23  that the prior attorney might have had with opposing

24  counsel but it is my understanding that my firm may have

25  articulated to opposing counsel that we still wanted to

5

                              Proceedings

1   have another opportunity to depose Mr. Korban because

2   during his last deposition, he stated sort of an

3   inability to recall things or was having issues giving, I

4   don't want to say truthful statements, but accurate

5   statements to the questions being asked.

6           So in addition to plaintiff having to be

7   deposed, we would like to revisit the conversation of

8   having Mr. Korban redposed, maybe for the full seven

9   hours but at least for a specific time period to see if

10  his memory is better or if he's feeling better that day

11  and he can actually answer the questions being asked.

12          THE COURT:  Mr. Forman?

13          MR. FORMAN:  Your Honor, I believe he was

14  already deposed for more than seven hours.

15          THE COURT:  Uh-huh.

16          MR. FORMAN:  And I believe the other -- the

17  owner was deposed twice for way more than seven hours,

18  more like fourteen hours.

19          MR. LEON:  But just to be clear, the owner that

20  you spoke about, that was pursuant to a (30)(b)(6) and an

21  individual deposition, correct?

22          MR. FORMAN:  Uhm.

23          MR. LEON:  Because that was my understanding.

24          MR. FORMAN:  No, Mohamed Almogazi.  He's a

25  named defendant.

6

Proceedings

1        THE COURT:  So, Mr. Korban is who?

2        MR. LEON:  He was one of the company's

3  witnesses, someone that would have information regarding

4  the facts of this case.  I am happy to have this

5  discussion with opposing -- this is the first time we're

6  meeting and having a conversation.  So I would endeavor

7  after this conference or subsequently during the course

8  of this week to finalize any scheduling of depositions or

9  any subsequent conversations regarding that but I did

10  want to put on the record that we do intend or at this

11  time intend to have another deposition of Mr. Korban.  If

12  some reason that's not feasible or it's something that's

13  not going to happen, then I would say opposing counsel

14  and I can discuss it and finalize that situation.

15        THE COURT:  What is the name of that person,

16  Koblan (sic).

17        MR. LEON:  K-O-B-L-A-N (sic), I forget his

18  first name.

19        THE COURT:  Koblan, okay.

20        MR. FORMAN:  Yeah, Ahmed Korban, K-O-R-B-A-N.

21        MR. LEON:  OH, excuse me.

22        MR. FORMAN:  Ahmed.

23        THE COURT:  And Mr. Forman, are you opposing

24  that or --

25        MR. FORMAN:  Yes.

7

                         Proceedings

 1            THE COURT:  Yes.  Okay.  So --

 2            MR. FORMAN:  Your Honor, this is an employee

 3   who was a limousine driver for four months and there's

 4   been over twenty hours of depositions of my clients and

 5   she has not -- after two years of bringing this lawsuit,

 6   she has not appeared for a deposition.

 7            THE COURT:  Uh-huh.

 8            MR. FORMAN:  Yes, we're going to oppose it for

 9   a four-month employee, seeking overtime wages.

10            THE COURT:  But I am just focusing on Mr.

11   Korban.  Is he an employee?

12            MR. FORMAN:  I believe he was the owner.

13            THE COURT:  He's the owner.  Okay.  Mr. Leon,

14   what you're saying is just that he didn't recall things

15   at the first deposition.  You want to re --

16            MR. LEON:  Yes, my --

17            THE COURT:  -- depose him to see if he recalls

18   better now?

19            MR. LEON:  My understanding is that during the

20   second deposition of Mr. Korban, he repeatedly stated,

21   and I may be just paraphrasing at this point but that

22   something was impeding him from remembering, that he

23   wasn't -- something to the effect of not feeling well and

24   not being really able to ascertain the questions or give

25   a full, accurate response.

8

Proceedings

1          I would like to revisit that conversation with

2   opposing counsel before stating any objections or

3   consenting to anything.  I would like to have an

4   opportunity to speak with opposing counsel regarding this

5   point and see that if we can agree on our own whether or

6   not we will proceed with Mr. Korban's deposition or not.

7          But first and foremost regarding plaintiff to

8   opposing counsel's point, I will endeavor this week to

9   get a definitive answer from her because I agree, it's

10  been a few months since the last conference and I

11  definitely want to alert the Court, as well as opposing

12  counsel as to her availability.

13          THE COURT:  So, Mr. Forman, do you want to have

14  the conversation about redeposing Mr. Korban or do you

15  want me to make a decision now?

16          MR. FORMAN:  Uhm.

17          THE COURT:  I mean, I will give you the

18  opportunity to have the discussion if you wish, but if

19  you already know your position and want to argue it --

20          MR. FORMAN:  That's my position that he

21  answered their question and I believe the questions were

22  objected to and they involve a prior criminal offense,

23  his prior criminal record and the attorney, who was a

24  different attorney at the time, and he objected to that

25  as irrelevant.

9

Proceedings

1      THE COURT:  But was there testimony to the

2  effect that he wasn't feeling well that day, such that a

3  second deposition -- in a second deposition, he might be

4  able to answer those questions?

5      MR. FORMAN:  I don't believe so, no.

6      THE COURT:  All right.  Do you have the

7  specific passages where he said he wasn't feeling well

8  that day?

9      MR. LEON:  Unfortunately, I don't have the case

10  file with me here today.  But like I said, I mean, part

11  of the reason I would like to revisit this conversation

12  with opposing counsel prior to any official decision, so

13  that we can discuss and if I point to something to him

14  and say well this particular question I thought was

15  something that he should have been able to answer to and

16  the question that was important or relevant or whatever

17  you want to call it, that we can decide whether or not we

18  agree on the validity of that objection.

19      THE COURT:  So if -- I am going to make a

20  preliminary ruling for you, Mr. Leon, because I don't

21  want you to engage in unnecessary motion practice.

22      MR. LEON:  Right.

23      THE COURT:  But if you're just trying to

24  revisit this witness because he didn't recall, I'm not

25  going to allow that.  But if there are specific -- there

Proceedings

1  were specific conditions that he alluded to that day

2  which it's possible that he no longer has that position

3  -- that condition, if he wasn't feeling well that day and

4  therefore couldn't remember but now a second day, he

5  might feel better.  Then I'll permit some questioning on

6  that.  You can talk to Mr. Forman about making the

7  arrangements.

8           But if you can't talk to any specific

9  information where he had a condition that's likely to be

10  different at another deposition, then I am going to deny

11  that.

12           MR. LEON:  Yes, your Honor.

13           THE COURT:  Because I don't think you should

14  get a second bite at the apple.

15           MR. LEON:  Sure.  Your Honor, how do you

16  suggest we follow-up --

17           THE COURT:  Well, if you can point to specific

18  -- the burden's on you.  If you can point to something

19  specific, then you can share that with Mr. Foreman and

20  you can try to work that out but if you can't point to

21  anything specific, then I would advise that you not

22  bother coming back to me.

23           MR. LEON:  Sure, sure.

24           THE COURT:  Yea.

25           MR. LEON:  But just to be clear, assuming you

Proceedings

1   make a preliminary decision here and then we discuss it

2   and say I can point to certain provisions or certain

3   parts where he didn't recall -- not recall, but didn't

4   feel well enough to respond to that question at that time

5   and we disagree, is this something that I should file a

6   letter with you or is this something --

7              THE COURT:  Yea, then it would be a motion to

8   compel --

9              MR. LEON:  Okay.

10             THE COURT:  -- based on that but like I said,

11  you need to be very clear that it's something that's

12  likely to be different at that next -- at the deposition

13  you're requesting and not just an exploration of maybe

14  he'll remember better today, which is usually not the

15  case.

16             MR. LEON:  Understood, your Honor.

17             THE COURT:  All right.  So are there any other

18  discovery -- and then as far as your client, I am going

19  to give you a deadline --

20             MR. LEON:  Sure.

21             THE COURT:  -- to give specific information and

22  -- to her deposition because she's the one who brought

23  the case, so she's got to make herself available.  So I

24  would like you to provide information by December 15th.

25  I'll give you two weeks to provide specific information

Proceedings

1  and dates when she can be available but let me put it

2  this way, provide dates when she can be available or

3  specific information as to her medical condition and why

4  she's not available.  And a date when she's likely to be

5  available.

6          MR. LEON:  Yes, your Honor.

7          THE COURT:  And if there accommodations that

8  need to be made, location, timing, that kind of thing,

9  you should provide that, as well.  Okay.

10          And otherwise, is discovery complete except for

11  these deposition issues?

12          MR. LEON:  Yes, your Honor.

13          MR. FORMAN:  Yes, your Honor.  All documents

14  were (indiscernible).

15          THE COURT:  Okay, great.  So let's turn now to

16  the motion for conditional certification.  Mr. Leon,

17  plaintiff brought this motion, so why don't you start?

18          MR. LEON:  Yes, your Honor.  I apologize, your

19  Honor.  I wasn't aware that we were going to discuss the

20  particulars of the motion --

21          THE COURT:  Okay.

22          MR. LEON:  -- today during the status

23  conference.  I guess --

24          THE COURT:  You filed the motion or your

25  predecessor counsel filed the motion in July.

Proceedings

1          MR. LEON:  Correct, your Honor.  My

2   understanding is that discovery deadlines had been put on

3   some sort of hold pending a decision on this motion for

4   conditional class certification.

5          THE COURT:  Yes, and that's why I want to deal

6   with that motion.

7          MR. LEON:  Okay.

8          THE COURT:  Okay.  So you're not prepared?

9          MR. LEON:  If you could just give me a few

10  minutes just to review something and I apologize about

11  this, your Honor.

12         THE COURT:  Okay.  Mr. Forman, are you prepared

13  to go forward on this?

14         MR. FORMAN:  Yes, your Honor.

15         THE COURT:  Okay.

16         MR. FORMAN:  It's our contention that there's

17  no supporting affidavit that would support a motion for

18  conditional certification, although the bar is very low,

19  not even that has been met.

20         This is an employee who worked for four months.

21  She has not named any other employees who have been paid

22  similar to her.  There are no names in her affidavit.

23  She just says all the other drivers were the same as her.

24  There's also the discrepancy as to how she was paid.  In

25  her complaint, she claims that she was paid, I believe

14

Proceedings

1   $6.30 an hour, $6.25 an hour and now in her affidavit in

2   support of the motion, she's changing that and she said

3   that she was paid on a commission basis.  And so she says

4   all the drivers were paid on a commission basis like her

5   but she doesn't mention any drivers who actually worked

6   overtime.  This is an overtime case.  This is not a

7   minimum wage case.  And so, even if the other drivers

8   were paid on a commission basis as her, we don't know and

9   she doesn't allege that they worked more than forty-hours

10  a week to be entitled to overtime.

11       THE COURT:  So is the standard that she has to

12  name other similarly situated individuals?

13       MR. FORMAN:  The standard is a moving target

14  but there is a minimum and in the Eastern District, you

15  do have to at least allege that there are similar

16  employees who obviously worked overtime and weren't paid

17  for it.  Just that their allegation that, oh, I know

18  about it, I know that everybody was paid the same as me.

19  She doesn't say how she knows it and she doesn't say who

20  these people are.  At least I've seen affidavits where

21  they say Jose, a first name and not a last name.

22       THE COURT:  Right.  But isn't -- I mean, the

23  spirit of the FLSA is such that individual employees may

24  not know who the other employees are, right?

25       MR. FORMAN:  But they have to at least know

15

Proceedings

1   that there was a similar practice and policy that was

2   companywide.

3           THE COURT:  Uh-huh.  Is the burden on the

4   plaintiff to discern the policy or can that be discerned

5   from the defendant?

6           MR. FORMAN:  The burden on the plaintiff is to

7   come forward at least with a minimum allegation that

8   there is a common policy involving overtime and not

9   paying a premium rate for those hours.

10          THE COURT:  Uh-huh.

11          MR. FORMAN:  She doesn't allege that any other

12  employees did work more than forty hours.  She attaches

13  pages from the deposition -- the transcript of the

14  deposition of Ahmed Korban and the pages that have been

15  put in support of the motion state that he used his own

16  limousine.  He worked for other companies at the same

17  time that he worked for this company and it does not say

18  that he worked more than forty hours a week.

19          THE COURT:  But is there information that's let

20  say, counsel have been able to discern to date that there

21  was, in fact, a policy that would -- a policy or practice

22  that would affect other employees, other potential

23  members of this class.

24          MR. FORMAN:  What I argue in my memo is that

25  the plaintiff herself has alleged two policies.

16

Proceedings

1          THE COURT:  Uh-huh.

2          MR. FORMAN:  One that she was paid an hourly

3   rate and when she worked over forty hours, she wasn't

4   paid anything and then in her affidavit she says that she

5   was paid on a commission basis, not an hourly rate.

6          THE COURT:  Uh-huh.

7          MR. FORMAN:  And so if she can't tell the Court

8   how she was paid, how can she say that there was a common

9   policy when there's two ways that she might have been

10  paid.  So some drivers might have been paid hourly.  Some

11  drivers might have been paid on a commission basis.  And

12  the problem with that is that the Motor Carrier Act

13  exempts drivers who transport passengers for money across

14  state lines and there's no dispute that many of her trips

15  were from Manhattan to Newark Airport.  All the limo

16  drivers do a lot of pickups in Newark Airport.  Those

17  limo drivers we'll be arguing are exempt from the

18  overtime requirements.

19         THE COURT:  Yea, but just because some drivers

20  may be exempt --

21         MR. FORMAN:  Uh-huh.

22         THE COURT:  -- doesn't preclude a class

23  certification at this point, especially since it's

24  conditional, so that we can ascertain whether there are

25  in fact other similarly situated employees.

17

                              Proceedings

1            MR. FORMAN:  Well, those employees who are

2     exempt would be paid one way and the employees who aren't

3     would be paid another way.

4            THE COURT:  Uh-huh.

5            MR. FORMAN:  So if we get, you know -- if they

6     have 100 drivers, now the Court has to decide which

7     drivers are picking up passengers at Newark Airport and

8     which passengers -- which drivers aren't.  So it becomes

9     an individualized assessment of a large group of class

10    members.

11           THE COURT:  Right, but that's part of what the

12    Court should be doing to draw the line as to who is in

13    the class and who is outside the class.  You know, what

14    that class consists of.  So is your argument that we

15    shouldn't doing a conditional certification of the class

16    because you don't know on what basis the other employees

17    may be similarly situated because the plaintiff has

18    alleged two different bases?  Is that the basis?

19           MR. FORMAN:  Yes, that there is not even an

20    allegation that other drivers were paid similar to her

21    when she hasn't even said -- and she's alleged two ways

22    that she was paid.

23           THE COURT:  Well, but I mean that's two

24    different things you're saying there.  One is that she

25    hasn't alleged that there are people who are similarly

18

Proceedings

1    situated which I don't -- I mean, if she's asking for

2    class certification, she's in fact alleging that.  And

3    the other one is that she's alleged two things that are

4    in conflict.  So she needs to decide which one it is.

5              MR. FORMAN:  My main point is that it's even

6    below the minimum standard just to say that I wasn't paid

7    for overtime, the same as everybody else.  That's

8    basically all she said and the prior counsel even

9    submitted a reply memorandum without clarifying that

10   point.

11             THE COURT:  Uh-huh.

12             MR. FORMAN:  So we just have one small

13   affidavit, a two-page affidavit from the plaintiff.

14             THE COURT:  Okay.

15             MR. LEON:  Your Honor?

16             THE COURT:  Yes, Mr. Leon?

17             MR. LEON:  If I may?  What opposing counsel is

18   pointing to seem to be more questions relating whether or

19   not we in fact certify the class.

20             THE COURT:  Uh-huh.

21             MR. LEON:  Right now as your Honor was stating,

22   this is a conditional certification.  If opposing counsel

23   has any issues as to inconsistencies or finds at the end

24   of the day we can't point to anyone or we can't actually

25   pinpoint any individuals, then it seems like that's an

Transcriptions Plus II, Inc.

19

Proceedings

1    argument to be made at that time.

2         Right now the whole process, the whole point of

3    this motion and trying to ascertain who they are is

4    Because as your Honor stated, most plaintiffs or most

5    employees won't necessarily have that information with

6    people who formerly worked there or people who worked

7    there who may or may not have paid in that forum.

8         The objective and the mind set behind this

9    motion is to truly understand the parameters.  Right now

10   we're simply opening the door to see who is actually

11   inside, who is involved in this.  If opposing counsel

12   says there's inconsistencies, we would disagree obviously

13   but that wouldn't take away that there might be other

14   similarly situated people who were commissioned-based,

15   who were hourly based and who were not paid for overtime

16   that they were entitled to under FLSA, if that's what

17   proven.

18        In fact, right now, we're simply having a

19   discussion of who is involved and many times, it's the

20   employer who has all this information.  And the purpose

21   behind circulating of notice to individuals is to find

22   out who are these people, what was their situation.  Were

23   they, in fact, paid overtime?  Were they not?  How were

24   they paid?  Was it hourly, commissioned or not?

25        The standard, as opposing counsel says, is low

20

Proceedings

1    but we would wholeheartedly disagree that we have not

2    done the bare minimum.  As your Honor stated, by simply

3    filing a motion on behalf of similarly situated people,

4    by definition, we are making the allegation that those

5    individuals were suffering of a particular practice of

6    not being paid overtime.  And it is defendant's burden

7    and duty at a later time to disprove whether or not these

8    individuals constitute a class and whether or not they

9    were similarly affected.

10            THE COURT:  So how would you define similarly

11   situated for purposes of the class?

12            MR. LEON:  For purposes of this class, it would

13   include things like individual who had similar job

14   responsibilities, a similar job title, was not paid

15   overtime for hours worked over forty at time and a half.

16   It could be other individuals that suffer those same

17   consequences.

18            If it was proven that there was a companywide

19   practice of just not paying employees overtime, then

20   these individuals would all be interconnected in that

21   fashion.

22            THE COURT:  Were you able to ascertain in your

23   discovery whether there was, in fact, a companywide

24   policy?

25            MR. LEON:  We would say that there was a -- at

21

Proceedings

1   this time, based on what I recall looking at, that if not

2   a formal policy of not paying these individuals overtime,

3   this sort of informal policy, this unspoken policy that

4   these individuals will not be paid or are not paid for

5   the overtime that they're entitled to at the rate that

6   the law designates.

7          THE COURT:  Is one of the allegations that

8   these individuals were wrongly classified as independent

9   contractors?  Or is it just that they were employees who

10  were not paid overtime?

11         MR. LEON:  It is my understanding that it's

12  employees who were not paid for the overtime that the

13  FLSA sates.

14         THE COURT:  Okay.  So what is your factual

15  basis?  You have to make a modest but factual basis.

16         MR. LEON:  Right.  In terms of the motion that

17  we submitted and pursuant to our plaintiff's allegations,

18  as an employee who worked there, although only for four

19  months, as opposing counsel points out, this is a person

20  who while she may not know the name of each and every

21  person who were not paid overtime, employees talk.  They

22  have discussions about how they're paid, how they're not

23  paid.  Even if she doesn't talk to every single person,

24  there's going to be other who do similar jobs to her, or

25  people who are out and as she knows, employees talk and

22

Proceedings

1    she receives information from other employees stating,

2    you know, this is what we're paid. This is how we're

3    paid.  It's the understanding among the other employees.

4    So the understanding is if all these individuals who

5    worked here continuously for this time period were not

6    paid overtime, then there's a likelihood and the purpose

7    behind the motion for class certification, that other

8    people who came before them, as well as people who came

9    after them, were being paid in the same shape -- in the

10   same way or not paid in the same way.

11            THE COURT:  All right.  Mr. Forman, do you want

12   to respond to that?

13            MR. FORMAN:  I --

14            THE COURT:  That the contention that there is a

15   similarly situated class of individuals who are not paid

16   overtime based on the company practice

17            MR. FORMAN:  And in this case, the plaintiff

18   hasn't even alleged that she had conversations with other

19   employees, that would have explained something but she

20   only worked there for four months.  She works in her own

21   car.  I'm not sure where she would have talked to other

22   employees.

23            THE COURT:  Well, let me ask you, was there a

24   company policy of or is something that has been disclosed

25   in discovery to that effect?

23

Proceedings

1      MR. FORMAN:  I haven't seen it.  That each

2  employee is treated to according to whether they drive a

3  six-passenger limo, they are not exempt from overtime.

4  They drive more than eight passengers and there's a

5  fourteen-passenger limo, and there's a ten-passenger limo

6  and they are exempt from overtime.

7      MR. LEON:  Just on that point, I mean I know we

8  may disagree on this point but just by that very

9  description of particular individuals are paid in

10  particular ways pursuant to whatever type of car they

11  have, implicates that there is a policy to pay them in

12  some shape or form.  Now if we want to disagree whether

13  they were misclassified, whether they're exempt, whether

14  they should be paid overtime, that's a different story

15  but in effect, that's a policy.  That's a procedure of

16  how each particular person is paid or not paid.

17      THE COURT:  So was plaintiff the only person

18  who was not exempt?  Was the only person who was -- okay,

19  let me rephrase it.  Would there have been other drivers

20  who were driving fewer than six passengers?

21      MR. FORMAN:  Well, if I have to let the cat out

22  of the bag, my clients allege that she drove a ten-

23  passenger limo.  She did not drive a six-passenger limo

24  and we have proof of it.  We would love to depose her

25  about her allegation that she only drove a six-passenger

24

Proceedings

1   limo.

2           THE COURT:  Uh-huh.

3           MR. FORMAN:  I will be making a motion for

4   summary judgment if I can get a hold of her and get her

5   testimony, unless there's a question of fact, then we'll

6   be happy to do that.

7           THE COURT:  Right.  Okay.  So perhaps the

8   problem we're running into is that the plaintiff has not

9   been deposed, so we don't have a factual basis for --

10  what you're alleging is there's no factual basis because

11  you haven't had a chance to find out from her what her

12  situation was, so that we can define what similarly

13  situated looks like.

14          MR. FORMAN:  Your Honor --

15          THE COURT:  Is that --

16          MR. FORMAN:  -- with all due respect, these

17  motions are usually brought prior to any discovery --

18          THE COURT:  Right.

19          MR. FORMAN:  -- for the reason that the bar to

20  have a collective action is so low.

21          THE COURT:  Okay.

22          MR. FORMAN:  So I don't think deposing the

23  client will -- other than -- she could submit her

24  affidavit.  If  she hasn't submitted an affidavit that

25  would support a motion for collective action, I don't

Proceedings

1   think a deposition would.

2           THE COURT:  Has she submitted any affidavits in

3   this case?

4           MR. LEON:  I believe there may have been --

5   well an affidavit in support of or in reply in the motion

6   for conditional class certification but aside from that,

7   no.

8           THE COURT:  All right.

9           MR. LEON:  But I would agree with opposing

10  counsel that typically these motions are done prior to

11  deposition testimony. I myself have different case in

12  which I'm also working on one with nothing and I would

13  once agree with the burden being low.  And again, the

14  point of this notice, the point of trying to proceed and

15  get this class conditionally certified is to find out is

16  there a class. And that's what we're trying to do right

17  now.

18          Right now, plaintiff's argument doesn't have to

19  be and isn't, this is what it is.  It's let's explore

20  this.  We have a basis for exploring it.  We have a basis

21  for believing that other individuals who are similarly

22  situated weren't paid this and we would like the chance

23  to explore it, get their names, names of people who were

24  drivers of whatever types of cars, find out how they were

25  paid, were they paid in conformance to the policy,

26

Proceedings

1   whether informal or formal.

2           THE COURT:  Okay.

3           MR. LEON:  That's what we're trying to do.

4           THE COURT:  Well, the thing that's somewhat
5   troubling to me is I am not clear on what that class
6   looks like, given the dispute, somewhat unresolved
7   dispute about what her situation was.  And in the absence
8   of an affidavit as to what her situation actually was, I
9   don't know that we can say what is similar.

10          MR. LEON:  An affidavit separate from what may
11  have been provided with the motion?  Just for me --

12          THE COURT:  As far as what, I mean I think it's
13  what Mr. Forman raised.  It's like what exactly was she
14  driving.  You know, what was her situation?  Was she --
15  what were her job responsibilities.

16          MR. LEON:  I'm sorry.

17          THE COURT:  Yea, so --

18          MR. LEON:  I believe -- and again, I don't have
19  the document in front of me but I believe the complaint
20  very specifically outlines what types of car she drove,
21  when, her job responsibilities and such.  So there isn't
22  this sort of absence of factual allegation regarding what
23  her responsibilities were and pursuant to those
24  allegations, factual allegations regarding her job
25  responsibilities, her duties, what type of car she drove,

27

Proceedings

1   the motion was also drafted and filed in conformance to

2   that, not deviating from that complaint.

3            THE COURT:  So the class that you're asking to

4   have certified would consist of tell me.

5            MR. LEON:  The individuals who drive these

6   different cars as Ms. -- my understanding, and again if

7   your Honor would give me an opportunity to be able to

8   access something through my phone, so I can check it -- I

9   can look at it and give you a better idea --

10           THE COURT:  Okay.

11           MR. LEON:  -- it's all these individuals

12  working for the company who were not paid overtime, who

13  drove these different cars and according to company

14  policy, were not entitled to overtime and therefore not

15  paid for it.

16           THE COURT:  Right.

17           MR. LEON:  If we want to have a -- sort of a

18  disagreement or debate as to what individuals were

19  exempt, obviously we're wiling to engage in that at the

20  point in time when it comes to actually certify the

21  class.

22           THE COURT:  All right.  so let me give you a

23  moment to check your phone and get the information that

24  you said you wanted.

25           MR. FORMAN:  Your Honor?

28

Proceedings

1          THE COURT:  Yes, Mr. Forman?

2          MR. FORMAN:  In the meantime, your Honor, I

3  would point out paragraph 49 of the complaint lists the

4  vehicles she drove.  And then paragraph 2 of her

5  supporting declaration which is Exhibit 4 to the motion

6  or paragraph 2, she says which car she drove, and they're

7  both very vague.

8          THE COURT:  Well, I'm looking at paragraph 49

9  of the complaint and it says --

10          MR. FORMAN:  Okay.

11          THE COURT:  -- she drove town cars on a

12  substantial portion of her routes and also frequently

13  drove five-passenger minivan or six-passenger SUV or six-

14  passenger limousine.

15          MR. FORMAN:  Right.

16          THE COURT:  So that's pretty clear.  What's the

17  vague part?

18          MR. FORMAN:  Her affidavit.

19          THE COURT:  What does that say?

20          MR. FORMAN:  "I drove a number of different

21  vehicles.  I drove defendant's four-door town cars on a

22  substantial portion of my routes."  So she doesn't

23  mention four-doors --

24          THE COURT:  Well --

25          MR. FORMAN:  I guess that's what she means by

29

Proceedings

1    town car.

2              THE COURT:  Yea.  So that seems consistent.

3    One is more detailed than the other but I don't see an

4    inconsistency there.  So -- okay.

5              Mr. Leon, did you get what you needed?

6              MR. LEON:  What I was looking at was just

7    basically -- I was trying to look for the complaint.  I

8    was looking at the allegation regarding this -- I recall

9    that it had specifications and I agree, while the motion

10   may itself, the affidavit in support may have slightly

11   less details, it's still not inconsistent with that

12   complaint.

13             THE COURT:  Right.  Okay.  All right.  So I

14   think that the standard -- everyone agrees the standard

15   is low.  It's a modest factual basis.  And I think in

16   this case that there is -- that standard has been met,

17   especially at this stage.  It's a two-step process.  This

18   is step one and there's a factual basis such that I will

19   allow the certification --

20             MR. LEON:  Thank you, your Honor.

21             THE COURT:  -- the conditional certification to

22   go forward.  As far as the notice, I've read the

23   arguments about how far back the notice should go.  I

24   think it should go back from today -- three years from

25   today, rather than three years from the complaint.

30

Proceedings

1          And as far as the method of the notification, I

2    would like to hear on that point.  The request is that

3    there be notices be sent in Spanish and Arabic, in

4    addition to English.  What's the basis for that?

5          MR. LEON:  Well, our under --

6          THE COURT:  Why those particular languages?

7          MR. LEON:  Our understanding from discussing

8    this with our client is that the different employees who

9    may be affected by this, these are the common languages

10   that they speak and  unfortunately, not in cases -- not

11   in this particular case but we've run into other cases in

12   which when you send in only one language, unfortunately

13   someone who speaks, say it's only English, you send it

14   only in English, people who are Spanish-speakers or

15   Arabic-speakers or any other, don't understand it and it

16   sort of defeats the purpose of sending it in one language

17   and sending them this great opportunity for them to

18   vindicate their rights but they just can't understand it.

19         So we want to maximize all employees who were

20   affected whose first language may not be English, that

21   they may actually read it and understand what's happening

22   because sometimes as simple as these notices can be, it

23   can be confusing even to someone whose native language is

24   English and reads the notice in English.

25         So we just want to make sure that all employees

31

Proceedings

1   who have worked for the company and are to receive a

2   notice, fully understand what that notice is before them

3   because our understanding is that not all of them have

4   English as their first language.  It's Spanish, Arabic

5   and the other one is, your Honor --

6           THE COURT:  And so plaintiff would make those

7   translations?

8           MR. LEON:  That would be something that I was

9   prepared to discuss with opposing counsel about who would

10  do that or to what degree would we confer on the language

11  itself.  Ultimately, if it comes down to it, yes, we

12  would get that translated.

13          THE COURT:  And what do you propose as the

14  method of getting the notices out?

15          MR. LEON:  Well, I can that for -- I know it's

16  very common that, for example, in certain Spanish

17  newspapers, notices be put because that's -- certain

18  newspapers here in the States for Spanish-American

19  residents or just people of Latino descent, they

20  primarily will respond to seeing something in the

21  newspaper saying here's your notice.

22          I would just like that confirm that -- I just

23  want to confirm that that is something that our client,

24  as well as our firm, believes is the most effective way.

25  If your Honor wouldn't mind that -- I could just finalize

32

Proceedings

1  that.  I just want to make absolutely sure the method in

2  which we will circulate that notice.

3          THE COURT:  Okay.  So if that's the method,

4  then we don't need to have the addresses or -- or you

5  could have a last known address.  Well, let me hear you,

6  Mr. Forman, from the papers there was an objection to the

7  specific information being sought --

8          MR. FORMAN:  Yes, your Honor.

9          THE COURT:  -- the potential members of the

10  class.

11          MR. FORMAN:  The plaintiff speaks Portugese.

12  She doesn't speak Arabic.  She doesn't speak Spanish.

13          THE COURT:  Uh-huh.

14          MR. FORMAN:  There's no proof that anybody

15  speaks Spanish.  My clients are -- speak English.  I

16  mean, everybody speaks -- this is not a restaurant with

17  cooks and people who don't meet the public, busboys who

18  only speak Spanish.  These are professional limousine

19  drivers.  They have to take their driving test in

20  English.  They have to speak to customers in English.

21  They don't operate at work in Spanish.  They have to read

22  traffic signs.

23          MR. LEON:  If I may?

24          THE COURT:  Okay, wait.  Hold on a second.  So

25  then as to the point where there was an objection on

33

Proceedings

1   specific information, you had -- I believe that the

2   defendant's position was that they could provide the

3   names and last known address but not telephone numbers or

4   other things.

5         MR. FORMAN:  Yes, your Honor, we might be able

6   to provide the other information if the letters are

7   returned as undeliverable.

8         THE COURT:  All right.  Yes, on the language

9   part --

10         MR. LEON:  Yes.

11         THE COURT:  -- and then on the addresses.

12         MR. LEON:  On the language portion, just

13   because -- and I understand that limousine drivers would

14   have to be able to read the traffic signs and take a test

15   in English but that is completely different.  Reading a

16   stop sign with red in big letters is different than

17   reading a notice that's coming pursuant to a court order,

18   letting them know of their rights.

19         And as I was stating before, I would say this,

20   if I wasn't a lawyer and I received a notice in a case

21   like this, I wouldn't be 100 percent sure what it is in

22   and of itself.  It's difficult enough to digest, let

23   alone if it's not in your native language.

24         THE COURT:  But why Spanish and Arabic if your

25   client speaks Portugese?

34

Proceedings

1    MR. LEON:  Well, just to be clear, just Because
2 our client only speaks Portugese or not the other
3 languages that we're asking for, doesn't mean all these
4 other employees.  Our understanding pursuant to
5 conversations with our client and her understanding of
6 her coworkers dynamic, the people who were speaking, that
7 -- what their languages are, what their native languages
8 are.  And we want to ensure, just Because opposing
9 counsel says there's no proof that other people speak
10 these languages, well that was first and foremost, that's
11 why we also want to get the names of these individuals
12 and their full contact info, so we can identify them
13 completely but our understanding is in speaking with our
14 client, is that her coworkers aren't just native English
15 speakers.

16    THE COURT:  I understand that point but I am
17 still puzzled as to why you picked those languages.

18    MR. LEON:  Because her understanding is that
19 other employees, these are their native languages.
20 That's why, these specific languages.  It wasn't an
21 arbitrary choice.  It was -- our understanding in
22 speaking with our client is that her coworkers or people
23 that she's known that's worked there, these are the
24 different languages that they speak.  And just to be
25 clear, as a native language.

35

Proceedings

1          THE COURT:  All right.

2          MR. FORMAN:  Your Honor, she only worked there

3   four months.

4          THE COURT:  Yes.

5          MR. FORMAN:  So they're asking for information

6   going back three years.

7          THE COURT:  Right.

8          MR. FORMAN:  She has no idea what -- the

9   language they speak.  My clients speak English because

10  that's the language that -- nobody speaks Arabic.  They

11  speak English to everybody.

12         THE COURT:  It --

13         MR. FORMAN:  They don't speak Portugese.  They

14  don't speak Spanish.

15         THE COURT:  Okay.  So just to be clear, these

16  are the -- Spanish and Arabic are the two languages

17  you're requesting.  It's not that you're going to then

18  later on come back and ask for Bengali and Chinese.

19         MR. LEON:  No, your Honor.  We have no reason

20  to believe that it's any other language than the ones

21  that we set forth in the motion.  There's no reason.

22         THE COURT:  Okay.  And is there any reason for

23  you to need anything other than the names and last known

24  addresses of people who worked there three years to the

25  present?

36

Proceedings

1      MR. LEON:  Is there any reason to have anything

2  else, such as --

3      THE COURT:  Anything other than those?

4      MR. LEON:  -- the phone numbers?

5      THE COURT:  Correct.

6      MR. LEON:  Well, in the event that we cannot

7  reach someone through an address -- I mean, we just want

8  to have a complete and accurate contact information for

9  these individuals.

10      THE COURT:  Okay.

11      MR. LEON:  And if we're getting this

12  information, name, address, all that, the phone number

13  might as well go in with it.  I mean it's --

14      THE COURT:  Well, the might as well is not

15  really a compelling argument.

16      MR. LEON:  I understand, your Honor.  We just

17  want to make sure that we have the full, accurate contact

18  information for each one of these potential individuals.

19      THE COURT:  But you've already stated that the

20  notice is meant to go out through newspapers.

21      MR. LEON:  Well, no, what I said was that

22  specifically regarding Spanish-speakers, that -- I said

23  that in the past, things that we've done is circulate

24  notices to newspapers and what I was saying was that I

25  was that I wasn't 100 percent positive that was something

Proceedings

1  we wanted to do but I just wanted to throw that out as an

2  option, at least regarding the Spanish-speakers. But

3  perhaps it's better to do just one universal one

4  consistent approach for all the different language

5  speakers.

6        So if your Honor is amenable to this, I would

7  like to simply confirm the manner in which we will

8  circulate the notice. That's what I would like to do.

9        THE COURT: So I will allow the notices to go

10 out in Spanish and Arabic but that translation -- the

11 cost of the translation will be on the plaintiff. And

12 also, I will ask the defendant to provide the names and

13 last known addresses but not telephone numbers or any

14 other identification. Okay.

15       And if you want to put the notice in the -- is

16 there any objection to their putting this in a newspaper?

17       MR. FORMAN: Yes, your Honor. There's no

18 evidence that anybody speaks Spanish in this company.

19       THE COURT: I understand.

20       MR. FORMAN: The plaintiff speaks Portugese.

21       THE COURT: I understand but if the cost is

22 being bored by the plaintiff, what is your objection?

23       MR. FORMAN: You're inviting people to make

24 unfounded allegations.

25       THE COURT: But the people who are going to be

38

                              Proceedings

1   receiving the notice are the former employees.

2           MR. FORMAN:  Not once it gets into a Spanish

3   newspaper.

4           THE COURT:  Okay, so you're objecting to the

5   newspaper.

6           MR. FORMAN:  Yes.

7           THE COURT:  Okay.  So let me then be clear that

8   the notices will just go out to the names and last known

9   addresses of the employees for the three years preceding

10  today.

11          MR. LEON:  Okay.

12          THE COURT:  The names and addresses will be

13  provided by the defendant.  No notice in the newspaper.

14          MR. LEON:  Okay.

15          THE COURT:  Okay.  so is that clear?  Any

16  questions about that?

17          MR. FORMAN:  That's all limo drivers?

18          THE COURT:  Yes.  Right?  The limo drivers, all

19  limo drivers --

20          MR. LEON:  Yes.

21          THE COURT:  -- is that the list?  All right.

22  Great.  So I will memorialize that.  Do we have a date

23  for the next conference?  We have the December 15th

24  deadline as far as the plaintiff's deposition

25  information.  Let me see.

Proceedings

1        Oh, yes, for the notice, how long will the opt-

2   in period be?  Proposals?  How long?  Do you need thirty

3   days?

4        MR. LEON:  I was thinking more along the lines

5   of forty-five days if your Honor would be okay with that.

6        THE COURT:  Okay.  Mr. Forman, do you have a

7   position on the --

8        MR. FORMAN:  Forty-five --

9        THE COURT:  Forty-five -- all right.

10        MR. FORMAN:  -- days is routine.

11        THE COURT:  And how soon can you get the

12   notice?

13        MR. LEON:  I would endeavor within the week.

14        THE COURT:  Okay.  So let's get the notice out

15   by --

16        MR. FORMAN:  Your Honor, I think I'll need two

17   weeks to get those names.

18        THE COURT:  Okay.  So let's do this then, a

19   week for the notice to be finalized, December 8th.  Two

20   weeks to get the names of the potential class members.

21   So that's December 15th.  And then obviously need

22   sometime to send it out, so I will give you until --

23   we'll calculate from the 18th, forty-five days.  So that

24   takes us to the beginning of February.  So let's have the

25   opt-in period end February 1st.

40

Proceedings

1        So let's have our next conference sometime

2   after that.

3            MR. LEON:  Your Honor, I apologize.

4            THE COURT:  Yea.

5            MR. LEON:  Do you believe that for the first

6   date, December 8th, we can get just a few days more?

7   Only because I'm just thinking about the Arabic portion

8   of it, about getting that translated.

9            THE COURT:  All right.  Then I'll give you

10  until December 11th.

11           MR. LEON:  Thank you.

12           THE COURT:  And I'll extend the opt-in period

13  to February 5th.  So let's have our next status

14  conference on February 18th -- February 16 will the next

15  status conference at 11 o'clock.  I very much hope but I

16  am not going to compel this because I don't know what the

17  plaintiff's medical condition is but I very much hope by

18  then that will be -- the deposition will be done because

19  then we could move forward.

20           MR. LEON:  You're referring to February 16th.

21           THE COURT:  February 16th.

22           MR. LEON:  Correct.

23           THE COURT:  Yes.

24           MR. LEON:  Yes, your Honor.  That is our main

25  goal.

41

                              Proceedings

1             THE COURT:  Okay, great.  So good luck.  Thank

2    you.

3             MR. FORMAN:  Thank you.

4             THE COURT:  Mr. Leon, you did fine.

5             MR. LEON:  Thank you.  I apologize, your Honor.

6                         (Matter concluded)

7                              -oOo-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

42

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **16th** day of **December**, 2015.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.